# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,    )
)
       Plaintiff,    )
)
    v.    )     **Case No. 20-cr-30063**
)
STEVEN M. WELLS,    )
)
       Defendant.    )

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Steven M. Well's Motion for Determination of Statutory Sentencing Range (d/e 19). For the reasons below, the Court DENIES Defendant's Motion.

## I. BACKGROUND

On October 7, 2020, a grand jury returned an Indictment (d/e 8) charging Mr. Wells with two counts of knowingly and intentionally distributing more than 28 grams of cocaine base (crack cocaine) in violation of §§ 21 U.S.C. 841(a)(1) and (b)(1)(B)(iii). Pursuant to § 841(b)(1)(B), a mandatory minimum sentence of five years' imprisonment applies to convictions on these counts. On

April 12, 2021, Mr. Wells filed this motion (d/e 19) and accompanying Memorandum of Law (d/e 20) asking the Court to enter an order determining the statutory sentencing range that he will face in the instant case. Mr. Wells argues that the Safety Valve under 18 U.S.C. § 3553(f) applies to him and that he, therefore, has no mandatory minimum sentence. Mr. Wells seeks an order that he is safety valve eligible and has requested a hearing on the motion. The Government filed a response (d/e 21) on April 26, 2021. Mr. Wells filed a reply (d/e 22) on April 28, 2021, and a supplemental memorandum (d/e 24) on May 21, 2021.

## II. DISCUSSION

Mr. Wells asks the Court to interpret the safety valve provision under 18 U.S.C. § 3553(f). For qualifying offenses, the § 3553(f)(1) safety valve provision requires the Court to impose a sentence "without regard to any statutory minimum sentence" if the Court finds at sentencing that the requirements of 3553(f)(1)-(5) are met. Prior to 2018, § 3553(f)(1) required a defendant to have no more than one criminal history point as determined under the sentencing guidelines to qualify for the safety valve. The First Step Act of 2018 amended the § 3553(f)(1), allowing more defendants to fall within

the safety valve.  In relevant part, the statute now provides that:

> [T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—
>
> > (1) the defendant does not have—
> >
> > > (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines
> > >
> > > (B) a prior 3-point offense, as determined under the sentencing guidelines; <u>and</u>
> > >
> > > (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

18 U.SC. § 3553(f) (emphasis added).

The parties agree that Mr. Wells has more than 4 criminal history points and a prior 3-point offense under the Sentencing Guidelines, but Mr. Wells argues that he does not have a 2-point violent offense as that term is defined under 18 U.S.C. § 3553(g). Mr. Wells argues that he remains safety valve eligible because the "and" between subsection (B) and (C) should be read conjunctively so that defendants are only disqualified from the safety valve if they fail all three of the (f)(1) requirements.  Put another way, Mr. Wells

argues that a defendant must have more than 4 criminal history points, a prior 3-point offense, <u>and</u> a prior 2-point violent offense before they become ineligible for the safety valve.  Mr. Wells also argues that prior acts of juvenile delinquency do not qualify as a "violent offense" under § 3553(f)(1)(C).  If the Court rules in his favor on both issues, Mr. Wells states that he would be eligible for the safety valve.  The Government argues that Mr. Wells' Motion is not ripe for review, that § 3553(f)(1) should be read disjunctively so that a defendant is disqualified from the safety valve if he has more than 4 criminal history points, <u>or</u> a prior 3-point offense, <u>or</u> a prior 2-point violent offense, and that Mr. Wells' juvenile conviction qualifies as a 2-point violent offense.

While the Court finds the motion is ripe for review, the Court agrees with the Government's position that § 3553(f)(1) should be read disjunctively.  Because the Court concludes that Mr. Wells would only qualify for the safety valve if he does not have any of the three criteria under § 3553(f)(1), and he concedes that he does meet two of the three criteria, the Court declines to rule on whether Mr. Wells' prior juvenile offense qualifies as a 2-point violent offense.  As Mr. Wells' motion turns on a purely legal question of statutory

interpretation, the Court will decide the motion on the briefs rather than granting Mr. Wells' request for a hearing.

**A. Mr. Wells' Motion is Ripe for Review.**

The Government first argues that Mr. Wells' argument is premature. "Article III's 'case or controversy' requirement prohibits federal courts from issuing advisory opinions that do not affect the rights of the parties before the court." <u>Matlin v. Spin Master Corp.</u>, 979 F.3d 1177, 1181 (7th Cir. 2020). Section 3553(f) states safety valve eligibility is to be determined at sentencing "after the Government has been afforded the opportunity to make a recommendation." Mr. Wells seeks a determination from the Court as to his safety valve eligibility far in advance of sentencing—he has neither pled guilty nor been found guilty at trial of the offense. Even if the Court rules in Mr. Wells' favor, Mr. Wells could still end up being ineligible for the safety valve under another factor—for instance, Mr. Wells would not qualify for the safety valve if Mr. Wells does not truthfully provide the Government all information and evidence required pursuant to § 3553(f)(5). Or, Mr. Wells could be acquitted of the offense at trial or the charges could be dismissed for other reasons. So, a ruling on this issue could potentially <u>never</u>

be necessary in this case.

Mr. Wells argues, however, that he needs to know how long he faces in jail if convicted so that, if he pleads guilty, his plea is knowing and voluntary. Mr. Wells relies on United States v. De La Torre, 940 F.3d 938, 952 (7th Cir. 2019), reh'g denied (Dec. 2, 2019), which held on plain error review that two defendants' pleas were not knowing and voluntary where they did not know that they were not facing a mandatory minimum of life imprisonment without the plea agreement. The Court agrees that Mr. Wells has a right to know the potential penalties he faces prior to pleading guilty. See Fed. R. Crim. P. 11(b)(1)(I). Accordingly, on the facts of this case, the Court finds that an opinion would not be advisory and that Mr. Wells' motion is ripe for review.

## B. Section 3553(f)(1) Is Written Disjunctively.

The substance of Mr. Wells' motion involves the amendments to the safety valve statute made by the First Step Act—a highly technical debate that has now resulted in a circuit split. Mr. Wells argues that the "and" between subparagraphs (B) and (C) of § 3553(f)(1) should be read conjunctively so that defendants are only disqualified from the safety valve if they fail all three of the

(f)(1) requirements, meaning a defendant must have more than 4 criminal history points, a prior 3-point offense, and a prior 2-point violent offense before they become ineligible for the safety valve. On the other hand, the Government argues that the "and" in § 3553(f)(1) should not be read conjunctively, but disjunctively, such that any defendant who has either more than 4 criminal history points, or a prior 3-point offense, or a prior 2-point violent offense is ineligible for the safety valve.

The Seventh Circuit has not addressed the issue of whether § 3553(f)(1) is written conjunctively or disjunctively. However, a circuit split has now developed with the Eleventh Circuit adopting a disjunctive reading and the Ninth Circuit adopting a conjunctive reading. See United States v. Garcon, 997 F.3d 1301 (11th Cir. 2021) (holding a disjunctive reading applies because the conjunctive reading produces superfluities and absurd results); United States v. Lopez, 998 F.3d 431 (9th Cir. 2021) (holding a conjunctive reading applies after finding that a 2 or a 3-point violent felony qualifies for subparagraph (C), making a conjunctive reading of the statute not superfluous and does not produce absurd results, and also relying on the canon of consistent usage). District

courts have also addressed the issue and reached different conclusions. See United States v. Ingram, 2021 WL 1813178 (C.D. Ill. May 6, 2021) (adopting the disjunctive reading because conjunctive reading produces superfluities and absurd results); United States v. Adame, No. 1:18-CR-00391-BLW, 2019 WL 5191823 (D. Idaho Oct. 15, 2019) (similar); see also United States v. Lopez, No. 19-CR0261-L, 2019 WL 3974124 (S.D. Cal. Aug. 21, 2019) (finding 18 U.S.C. § 3553(f)(1) to be "ambiguous" and adopting the conjunctive interpretation after applying the rule of lenity), aff'd, 998 F.3d 431 (9th Cir. 2021) (affirming decision on different grounds). None of these decisions, however, are binding on this Court.

As Mr. Wells acknowledges in his supplemental brief, the Court recently agreed with the Government's position on this issue in United States v. Howell, No. 20-CR-30075-1, 2021 WL 2000245 (C.D. Ill. May 19, 2021). Mr. Wells' arguments and Howell's arguments, as well as the Government's arguments in both cases, are, in most respects, identical. Accordingly, this opinion draws heavily on the Court's Howell opinion.

In <u>Howell</u>, the Court acknowledged that both Mr. Wells' and the Government's readings of the statute are grammatically plausible. Reading the statute conjunctively conforms to the normal operation of the word "and." On the other hand, elsewhere § 3553 the presence of an em dash before a list in statutory language indicates that the word or phrase preceding the dash should be distributed to modify each of the succeeding list items individually. <u>See</u> 18 U.S.C. § 3553(a)(2) (distributing the phrase "the need for the sentence imposed" to modify each of the succeeding subparagraphs); <u>Mitchell v. Chapman</u>, 343 F.3d 811, 830 (6th Cir. 2003) (explaining that the use of an em dash to introduce a list can mean that the list items following the em dash individually modify the term preceding the em dash). Because both readings are grammatically plausible, the Court must consider all the "traditional tools of statutory interpretation." <u>Facebook, Inc. v. Duguid</u>, 141 S. Ct. 1163, 1170 n.5 (2021); <u>see</u> <u>United States v. Draheim</u>, 958 F.3d 651, 658 (7th Cir. 2020) (relying on text, legislative history, and statutory purpose of § 3553(f) to determine the unambiguous meaning of "and" in § 3553(f)(4)).

*1. The conjunctive reading makes § 3553(f)(1)(A) superfluous and produces absurd results.*

When a word could have multiple meanings, courts must consider the statutory context.  See <u>United States v. Jones</u>, 993 F.3d 519, 528 (7th Cir. 2021).  Looking at the statutory context here, while grammatically plausible on its face, the conjunctive interpretation suggested by Mr. Wells runs afoul of the "well-established principle[ ] of statutory interpretation" under which "[i]nterpretations that result in provisions being superfluous are highly disfavored."  <u>River Rd. Hotel Partners, LLC v. Amalgamated Bank</u>, 651 F.3d 642, 651 (7th Cir. 2011), <u>aff'd sub nom.</u>; <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639 (2012). Any defendant whose criminal history includes one 3-point offense and one 2-point violent offense will necessarily have at least five criminal history points.  Since subparagraph (A) is satisfied by any defendant with "more than 4 criminal history points" not from 1-point offenses, any defendant who satisfies subparagraph (B) by having a "prior 3-point offense" and satisfies subparagraph (C) by having a "prior 2-point violent offense" necessarily has at least 5 criminal history points that do not result from 1-point offenses, and

satisfies subparagraph (A) as well.  Under the conjunctive reading, therefore, subparagraph (A) is entirely superfluous.  <u>See</u> <u>Garcon</u>, 997 F.3d at 1305 (discussing the redundancy created by a conjunctive reading and the application of the cannon against surplusage); <u>Adame</u>, 2019 WL 5191823, at *7 (same).

Like the defendant in <u>Howell</u>, Mr. Wells argues that the redundancy is not complete.  He argues a "single, three-point, violent offense" would satisfy (B) and (C) without satisfying (A).  But, as the Court found in <u>Howell</u>, a 3-point violent offense is not included in the language of subparagraph (C).  Mr. Wells' approach would require the Court to add the words "or 3-point" to subparagraph (C) so that a defendant with "a prior 2-point [or 3-point] violent offense" satisfies the subparagraph's requirement.  If a single offense could satisfy the "prior 3-point offense" requirement and the "prior 2-point violent offense" requirement, the minimum number of criminal history points required to satisfy both (B) and (C) would be 3 rather than 5.  This interpretation would remove the redundancy of subparagraph (A) because it would allow defendants with a single violent felony to be safety-valve eligible while excluding violent felons with more than one serious prior offense.  However,

this "2-point or 3-point" reading is incompatible with the text of subparagraph (C), which specifically and exclusively addresses 2-point offenses.  The Court will not construe the statutory phrase "prior 2-point violent offense" to include 3-point offenses where an alternative interpretation consistent with the plain language of the statue exists.

Recent Seventh Circuit precedents establish that "the presence of some redundance is rarely fatal on its own to a statutory reading."  White v. United Airlines, 987 F.3d 616, 622 (7th Cir. 2021); see also Bridges v. United States, 991 F.3d 793, 802 (7th Cir. 2021) ("[A] textual argument based on avoiding redundancy is not necessarily a show-stopper.").  However, the Seventh Circuit has not held that the canon against surplusage is obsolete or irrelevant in 2021.  Rather, the Seventh Circuit has admonished against rejecting a reasonable interpretation solely on the grounds that it creates some superfluity.  See White, 987 F.3d at 622 (explaining that "redundance provides a clue as to the better interpretation but is not always dispositive" and adopting a somewhat redundant reading where legislative history produced a "straightforward explanation" for the redundancy).  Relying on

<u>Bridges</u>, Mr. Wells argues that while "many defendants" who satisfy subparagraphs (B) and (C) also satisfy subparagraph (A) this "just confirms the statute's coherence; it does not make subsection (A) superfluous." Def. Memo., d/e 20, pp. 24. However, as explained above, the Court does not agree with Mr. Wells' construction of the statute that only "many" defendants who satisfy subparagraphs (B) and (C) also satisfy subparagraph (A). Rather, the Court finds that <u>all</u> defendants who satisfy subparagraphs (B) and (C) also satisfy subparagraph (A). The provision rendered redundant by the conjunctive reading is situated directly next to the provisions that render it redundant, and the redundancy created is so complete that it cannot be explained by a drafter's desire to err on the side of caution with an overinclusive belt-and-suspenders approach.

Moreover, looking at the statutory context, a conjunctive reading would produce absurd results. Another well-established canon of statutory interpretation counsels against adopting constructions that produce absurd results. <u>See</u> <u>United States v. Vallery</u>, 437 F.3d 626, 630 (7th Cir. 2006) (statutes are construed to avoid "absurd results"); <u>Matter of Merchants Grain, Inc. By & Through Mahern</u>, 93 F.3d 1347, 1354 (7th Cir. 1996) (statutes are

construed to "favor the most reasonable result"). Under the conjunctive reading of § 3553(f)(1), a defendant who had multiple 3-point violent offenses would be safety valve eligible so long as he did not also have "a prior 2-point violent offense" satisfying subparagraph (C). This result would reward defendants for committing multiple serious violent offenses rather than a single less serious violent offense. Mr. Wells argues, as did the defendant in <u>Howell</u>, that the conjunctive reading can be rescued by interpreting subparagraph (C) to be satisfied by any violent offense that results in 2 <u>or 3</u> criminal history points. As discussed above, this interpretation cannot be reconciled with the plain text of the statute.

In supplemental briefing, Mr. Wells also points to the canon of consistent usage to support a conjunctive approach. "The canon of consistent usage requires a court to presume that 'a given term is used to mean the same thing throughout a statute' and is 'at its most vigorous when a term is repeated within a given sentence.'" <u>United States v. Lopez</u>, 998 F.3d 431, 437 (9th Cir. 2021) (citing <u>Brown v. Gardner</u>, 513 U.S. 115, 118, 115 S.Ct. 552 (1994)). In <u>Lopez</u>, the Ninth Circuit relied in part on this canon to

find that a § 3553(f)(1)'s "and" is conjunctive because the "and" after (f)(4) is conjunctive. 998 F.3d at 437. However, "the presumption of consistent usage "readily yields" to context." Util. Air Regul. Grp. v. E.P.A., 573 U.S. 302, 320, 134 S. Ct. 2427, 2441 (2014). The Ninth Circuit's application of this canon came after their conclusion that a single 3-point violent offense could satisfy subparagraph (B) and (C), making subparagraph (A) not superfluous under a conjunctive interpretation. As explained above, the Court respectfully disagrees with the Ninth Circuit's finding that a 3-point violent offense would fall under subparagraph (C). Accordingly, the Court finds that the statutory context points unequivocally towards reading "and" disjunctively in § 3553(f)(1) and that the presumption of consistent usage must yield to this context.

Rather than producing superfluities or absurd results, the disjunctive reading assigns distinct and harmonious functions to each of subparagraphs (A)–(C). Under the disjunctive reading, subparagraph (A) excludes repeat offenders, subparagraph (B) excludes felons, and subparagraph (C) excludes violent offenders. Subparagraph (A), which is rendered redundant by the conjunctive reading, is the only provision that excludes defendants with 3 or

more prior 2-point nonviolent convictions under the disjunctive reading.  Furthermore, the language of subparagraph (C)—which excludes only defendants with a "2-point violent offense," as opposed to defendants with a "2-point or 3-point violent offense"— makes logical sense under the disjunctive reading because defendants with 3-point violent offenses are already excluded by subparagraph (B).

> 2. *The Legislative history of the First Step Act's Safety Valve*
>    *expansion supports a disjunctive interpretation of*
>    *§ 3553(f)(1).*

To the extent that the statutory context does not conclusively make clear that "and" should be read disjunctively, the Court finds the legislative history supports a disjunctive interpretation as well. See also, Garcon, 997 F.3d at 1305, n.2 (finding that because the text of § 3553(f)(1) unambiguously demands a disjunctive reading, it was unnecessary to examine arguments about legislative intent). When an early version of the First Step Act was introduced in the Senate in November 2018, the Senate Judiciary Committee published a "fact sheet" and a "section-by-section summary" summarizing the bill's provisions.  Each of these documents states

that any defendant who has more than 4 criminal history points, <u>or</u> a prior 3-point offense, <u>or</u> a prior 2-point violent offense will be ineligible for the safety valve.  <u>See</u> The First Step Act of 2018 (S.3649) – as introduced, Senate Judiciary Committee, https://www.judiciary.senate.gov/download/revised-first-step-act_-summary (last accessed June 23, 2021); S. 3649 The First Step Act Section-by-Section, p. 6, Senate Judiciary Committee, https://www.judiciary.senate.gov/ download/revised-first-step_-section-by-section (last accessed June 23, 2021).  These summaries address the version of the First Step Act that was introduced on November 15, 2018, rather than the revised version that was signed into law on December 21, 2018, but the language of § 3553(f)(1) is the same in both versions.  Furthermore, the Judiciary Committee's point-by-point summary of the changes incorporated into the revised First Step Act does not indicate any change in the Judiciary Committee's understanding of the meaning of § 3553(f)(1) between the initial and revised First Step Acts.  <u>See</u> Summary of Revised First Step Act, Senate Judiciary Committee,

https://www.judiciary.senate.gov/download/first-step-act_-amendment-summary (last accessed June 23, 2021).

Additionally, several members of Congress stated during floor debates that the revised First Step Act expanded the safety valve to include "low-level, nonviolent" offenders. See 164 Cong. Rec. S7649 (Senator Grassley); 164 Cong. Rec. S7739 (Senator Schumer); 164 Cong. Rec. 7774 (Senator Feinstein); 164 Cong. Rec. H10362 (Congressman Goodlatte). The use of this phrasing instead of "low-level or nonviolent offenders" implies an understanding of the safety valve in which offenders are excluded if they are either high-level or violent, even if they are not both.

Mr. Wells argues that certain other statements by legislators indicate an understanding more in line with his conjunctive interpretation. Specifically, he points to Senator Patrick Leahy's statement that "I truly believe the error of mandatory minimum sentencing is coming to an end," 164 Cong. Rec. S7749, as evidence that "Senator Leahy hoped the new Safety Valve would end mandatory minimums." Def. Reply, d/e 22, p. 16. However, Senator Leahy elsewhere states that he "would like to see a broader judicial safety valve" than the one enacted, but that "the nature of

compromise" is that "[y]ou don't get everything you want." 164 Cong. Rec. S7749.  In context, Senator Leahy's statement is aspirational, evincing a belief that the First Step Act represents the first rather than the last step toward the elimination of mandatory minimums.

Mr. Wells also raises a textualist objection to the use of unfavorable legislative history.  Mr. Wells notes that the beliefs of individual members of Congress regarding a statute's meaning do not necessarily reflect the intent of Congress as a whole and cites Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020), for the proposition that judicial reliance on legislative history that contradicts the plain meaning of statutory text "risk[s] amending statutes outside the legislative process."  Id. at 1738.  It is true that reliance on legislative history is inappropriate where the language of a statute is unambiguous and does not lead to absurd results.  Preston v. Midland Credit Mgmt., Inc., 948 F.3d 772, 783 (7th Cir. 2020).  But the Court has already applied the traditional tools of statutory interpretation and concluded that the text of § 3553(f) does not unambiguously require the result that Mr. Wells requests.  A court may appropriately consult legislative

history when a statute is ambiguous.  <u>Matter of Burciaga</u>, 944 F.3d 681, 684 (7th Cir. 2019); <u>see</u> <u>White v. United Airlines, Inc.</u>, 987 F.3d 616, 622 (7th Cir. 2021) (resolving textual ambiguity by consulting legislative history to determine statute's intended meaning).  Here, the legislative history of the 2018 safety valve expansion resolves any textual ambiguity in § 3553(f)(1) by confirming that Congress intended the provision to be read disjunctively.

   3. *The rule of lenity does not apply.*

Finally, Mr. Wells argues in the alternative that the statute is ambiguous and, therefore, should be interpreted in his favor under the rule of lenity.  However, the rule of lenity applies only when "after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." <u>Abramski v. United States</u>, 573 U.S. 169, 188 n.10 (2014).  As in <u>Howell</u>, the Court finds that the rule of lenity does not apply because no such grievous ambiguity exists here.  Any ambiguity in the plain text of § 3553(f)(1) can be satisfactorily

resolved by analyzing the structure and legislative history of the provision.

In his supplemental filing, Mr. Wells argues that the Court should reconsider this finding in light of the Ninth Circuit's decision in <u>Lopez</u>.  Mr. Wells argues that the existence of a circuit split is evidence that that reasonable jurists can disagree on whether "and" should be read conjunctively or disjunctively and is, therefore, evidence that the statutory text is ambiguous.  However, the rule of lenity is "rarely" applied.  It is certainly not applied every time a circuit split has developed on the issue.  <u>See</u>, <u>e.g.,</u> <u>Shular v. United States</u>, 140 S. Ct. 779, 788 (2020) (resolving a circuit split in favor of the Government's interpretation and finding the rule of lenity did not apply).  The mere existence of opinions from reasonable jurists that the statute is ambiguous or that the statute unambiguously calls for a conjunctive reading does not convince the Court that the rule of lenity applies here.

### III. CONCLUSION

For the reasons above, the Court DENIES Defendant Steven M. Wells' Motion for Determination of Statutory Sentencing Range (d/e 19).

Signed on this 9th day of July 2021.

/s/ Sue E. Myerscough
Sue E. Myerscough
United States District Judge